UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| BEULAH BREEDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 3:12-CV-669-TAV-CCS |
| ) | |
| THE KROGER CO., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This civil action is before the Court on Defendant's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment [Doc. 15]. Plaintiff has responded [Doc. 16], and defendant has filed a reply to plaintiff's response [Doc 17]. The Court has carefully considered the motion and the record and, for the reasons stated below, finds that defendant's motion for summary judgment should be granted.

**I.    Background**

Plaintiff, Beulah Breeden, was hired by defendant The Kroger Co. ("Kroger") in 1980 and was employed there until her discharge in December 2011 [Doc. 16-2 pp. 3–4]. At the time of her discharge, plaintiff worked as the customer service manager of defendant's store [Doc. 16]. As customer service manager, "[a] large portion of her time was devoted to ensuring the smooth and efficient operation of the Front End. Specifically, Plaintiff was required to be physically present on the sales floor during the

busiest hours of the day" [Doc. 15]. Plaintiff was also "required to assist customers by checking out and bagging groceries as needed" [*Id.*].

On September 21, 2010, plaintiff suffered injury to her right shoulder while she was wringing out a mop in the bathroom at work [Doc. 15-2 p. 8]. Plaintiff subsequently visited a clinic and underwent an x-ray and an MRI before she learned that she had a torn tendon in her right shoulder [*Id.* at 9]. As a result of the tear, plaintiff underwent two surgeries on her shoulder because the first one was unsuccessful [*Id.*]. Plaintiff ultimately filed a workers' compensation claim against defendant for treatment associated with her shoulder injury [Doc. 16].

After her injury in September 2010, and her subsequent surgeries, plaintiff returned to work for defendant until her termination approximately one year and three months later [Doc. 15-2 p. 10]. During this period, plaintiff worked on "light duty" based on restrictions from her doctor prohibiting her from lifting anything over 20 pounds and from scanning groceries [*Id.* at 10–11]. While on light duty, plaintiff attempted to scan groceries and admitted that she was slow and that it was painful even though she was using her unhurt shoulder [*Id.* at 11–12].

On September 8, 2011, plaintiff's primary care physician, Dr. Michael O'Brien, ordered a Functional Capacity Evaluation on plaintiff to determine her physical abilities [Doc. 15; Doc. 15-8 p. 4]. Dr. O'Brien recommended that plaintiff remain on light duty—not lifting over 20 pounds and not scanning—while she continued to recover from surgery [Doc. 15-8 p. 10]. On September 13, 2011, plaintiff had a follow-up visit with

2

Dr. O'Brien where he determined she was "maximally medically improved," and would have a permanent impairment [Doc. 15-7 p. 4].

On December 9, 2011, defendant's Human Resources Manager, Brenda Cape, conducted an interactive meeting with plaintiff after being notified that permanent restrictions had been assigned for plaintiff [Doc. 15; Doc. 16-9 p. 4]. During this meeting, Ms. Cape terminated plaintiff's employment after determining that defendant could not "reasonably accommodate her permanent restrictions" based on her essential job functions [Doc. 16-9 p. 4].[1]

Plaintiff filed suit in the Seventh Judicial District for the State of Tennessee, Circuit Division on November 19, 2012, alleging retaliatory discharge [Doc. 2-1 Ex. A ¶ 5]. Plaintiff's cause of action stems from her allegation that she was discharged because of her assertion of her right to workers' compensation after her shoulder injury [*Id*.]. Defendant filed a timely Notice of Removal pursuant to 28 U.S.C. §§ 1332 and 1441 [Doc. 1].

## II.   Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact

---

[1] The record indicates a slight misunderstanding over the doctor's restriction saying "no standing" instead of "no scanning" [Doc. 15-9 p. 6]. Ms. Cape stated that based on her evaluation, defendant would not have been able to accommodate either restriction [*Id*.].

exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id*.

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id*. at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a

finder of fact because they may reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250.

## III. Analysis

In support of its motion for summary judgment, defendant presents two arguments. First, defendant argues that it is entitled to summary judgment because plaintiff cannot make out a prima facie case of retaliatory discharge for filing a claim for workers' compensation because plaintiff is unable to show that there is a causal connection between her filing a workers' compensation claim and her termination by defendant [Doc. 15]. Second, defendant argues that plaintiff cannot prove that the reasons for her termination were pretextual because defendant had a lawful, non-discriminatory reason for terminating her [*Id.*].

In the alternative, defendant argues that it should be entitled to partial summary judgment on plaintiff's eligibility to recover back-pay and/or front-pay [*Id.*]. Defendant argues that "[p]laintiff has retired, successfully applied for and received disability benefits from the Social Security Administration . . ., and received a settlement in her workers' compensation case for almost total and complete disability (83%)" [*Id.*]. Therefore, plaintiff should be judicially estopped from arguing in one forum that she is disabled and arguing in another that she is able to work and is entitled to front-pay and back-pay [*Id.*].[2]

---

[2] Because the Court finds that defendant's summary judgment motion should be granted, the Court need not address defendant's motion for partial summary judgment and will deny it as moot.

5

### A. Plaintiff's Prima Facie Case of Retaliatory Discharge

In *Clanton v. Cain-Sloan Co.*, the Tennessee Supreme Court first recognized an employee's right to proceed against his or her employer for retaliatory discharge taken against that employee for filing or threatening to file a workers' compensation claim. 677 S.W.2d 441 (Tenn. 1984). To make out a prima facie case of retaliatory discharge, a plaintiff must prove that: (1) the plaintiff was an employee of the defendant; (2) the plaintiff made a claim against the defendant for workers' compensation benefits; (3) the defendant terminated the plaintiff's employment; and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment. *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn. 1993). Once the plaintiff establishes each of these elements, the burden shifts to the defendant-employer to articulate a reason for the discharge that was legitimate and non-retaliatory. *Id.*[3] If the employer proffers a legitimate, non-retaliatory reason for the discharge, then the burden shifts back to the plaintiff to prove that the employer's proffered reason was pretextual. *Smith v. Bridgestone/Firestone, Inc.*, 2 S.W.3d 197, 200 (Tenn. Ct. App. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 72, 804 (1973)).

---

[3] In *Anderson*, the Tennessee Supreme Court adopted the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). 857 S.W.2d at 558. The court later overruled the *Anderson* decision by holding that the *McDonnell-Douglas* burden-shifting framework does not apply at the summary judgment stage in Tennessee. *See Gossett v. Tractor Supply Co.*, 320 S.W.3d 777, 785 (Tenn. 2010). The Tennessee General Assembly subsequently enacted Tenn. Code Ann. § 4-21-311(e) which superseded the court's holding in *Gossett* and re-instated the burden-shifting framework.

6

Here, plaintiff has established, and defendant does not dispute, the first three elements of her prima facie case—to wit, plaintiff was an employee of Kroger, plaintiff made a claim against Kroger for workers' compensation benefits, and plaintiff's employment was terminated by Kroger. Defendant argues, however, that plaintiff has failed to meet her threshold burden of establishing a causal connection between her filing a workers' compensation claim and her termination [Doc. 15].

A plaintiff, in a retaliatory discharge claim, may establish causal connection between a workers' compensation claim and a subsequent discharge through either direct evidence or compelling circumstantial evidence. *Thomason v. Better-Bilt Aluminum Prods., Inc.*, 831 S.W.2d 291, 293 (Tenn. Ct. App. 1992). Although courts have been hesitant to conclusively list what kind of evidence definitively establishes the requisite causal relationship, several courts have opined on what evidence is insufficient to create the link, including subjective beliefs and speculation. *See, e.g.*, *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1989) (finding that a plaintiff's subjective beliefs and mere speculation are not sufficient to create a causal relationship); *Vaughan v. Harvard Indus., Inc.*, 926 F. Supp. 1340, 1350 (W.D. Tenn. 1996) (holding that causation cannot be established simply because the plaintiff cannot think of any other reasons for the discharge) *overruled on other grounds by Bratten v. SSI Servs., Inc.*, 185 F.3d 625 (6th Cir. 1999); *Reed v. Alamo Rent-A-Car, Inc.*, 4 S.W.3d 677, 685 (Tenn. Ct. App. 1999) ("[A] plaintiff may not prevail on a wrongful discharge claim merely by showing that a causal connection exists between her on-the-job injury and her subsequent discharge.

7

Instead, the plaintiff must show that her claim for workers' compensation benefits, as opposed to her injury, was the true or substantial reason for her discharge." (citations omitted)).

Additionally, a plaintiff, in an effort to show a causal connection, can present circumstantial evidence in various forms, which may include: (1) "the employer's knowledge of the compensation claim"; (2) "the expression of a negative attitude by the employer towards an employee's injury"; (3) "the employer's failure to adhere to established company policy"; (4) "discriminatory treatment compared to similarly situated employees"; (5) "sudden and marked changes in an employee's performance evaluations after a workers' compensation claim"; or (6) "evidence tending to show that the stated reason for discharge was false." *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 391 (Tenn. Ct. App. 2006).

As evidence of a causal connection between her workers' compensation claim and her subsequent discharge, plaintiff argues that she was "subjected to repeated tactics and conduct by her employer that can only be described as retaliatory" [Doc. 16]. Plaintiff states that these tactics were evidenced by unexplained delays in medical care, hindered psychiatric evaluations, and missed payments for approved medications during her workers' compensation claim [*Id.*]. Plaintiff also argues that Kroger has a history of firing employees who seek compensation benefits for work-related injuries and who are represented by her attorney, Mr. Bobo [*Id.*]. In support of this contention, plaintiff lists

8

the names of three other Kroger employees who were terminated and whose cases are being handled by Mr. Bobo [*Id.*].

In reply, defendant states that there is no evidence that plaintiff's workers' compensation claim was handled by Kroger, or that they were aware or caused any of the delays [Doc. 17]. Rather, the claim was handled by a third-party claims management company, Sedgwick, and plaintiff admitted to dealing with the third-party company during her claim [Doc. 17; Doc 15-2 p. 9]. In the alternative, defendant argues that the Tennessee's Workers' Compensation Act is the exclusive remedy for plaintiff's complaints; therefore, she is barred from raising any issues with the manner the claim was handled [Doc. 17].[4]

The Court is persuaded by defendant's argument that plaintiff cannot prove the requisite causal connection based on the unexplained delays plaintiff suffered during the process of filing her workers' compensation claim. Plaintiff presents no evidence, direct or otherwise, suggesting that defendant orchestrated the delays or decisions made by the claims management company. Additionally, plaintiff's argument alluding to defendant's practice of firing other employees represented by her attorney is not sufficient to prove a causal connection because a plaintiff's conspiracy theories or subjective beliefs are not sufficient to prove the requisite causal connection for a retaliatory discharge claim. *See, e.g., Chappell*, 803 F.2d at 268 (finding a plaintiff's "[m]ere personal beliefs, conjecture,

---

[4] Because the Court finds that plaintiff has not met her burden on other grounds, the Court declines to address defendant's argument on the exclusivity of the Tennessee Workers' Compensation Act.

9

and speculation" insufficient to support an inference of causal connection); *Shroyer v. Dollar Tree Stores, Inc.*, No. 3:09-CV-203, 2011 WL 5184069, at *10 (E.D. Tenn. Nov. 1, 2011) (finding plaintiff's general allegations and conclusory statements were insufficient to prove causal connection); *Newcomb*, 222 S.W.3d at 391 ("A plaintiff's subjective beliefs, mere speculation, or testimony that the employee can think of no other reason for the discharge cannot, in and of themselves, create the requisite causal relationship."). Furthermore, plaintiff has failed to provide any other evidence of retaliation based on her workers' compensation claim. In fact, plaintiff admitted that at no time did defendant display any negative attitude toward her injury or ask her to do anything that violated her light-duty restrictions [Doc. 15-2 p. 13].

Viewing the facts in the light most favorable to the plaintiff, as the Court is required to do on a motion for summary judgment, plaintiff has not presented sufficient evidence to create a genuine issue of material fact on there being a causal connection between her claim and her discharge. Thus, because there is no evidence in the record on which to submit the issue of causation to the jury, defendants are entitled to judgment as a matter of law. *See Anderson*, 857 S.W.2d at 558–59.

### B. Plaintiff's Evidence of Pretext

Even if plaintiff were able to establish a causal connection between her workers' compensation claim and her discharge, defendant has articulated a legitimate, non-pretextual reason for plaintiff's discharge: that plaintiff was discharged because her

permanent restrictions made her physically unable to perform her job and the restrictions could not be reasonably accommodated by defendant [Doc. 15].

Plaintiff argues that defendant's reason is purely pretextual because plaintiff "could perform, and had been performing, the essential functions of her job for more than a year prior to her termination without any complaints, corrections, or issues by any agent or member of the Defendant's staff" [Doc. 16]. Plaintiff also states that her ability to perform her job in a satisfactory manner is evidenced by the performance evaluation she received during this period, rating her work performance as exceeding expectations [*Id.*]. Additionally, plaintiff argues that pretext is proven by the fact that the investigation into plaintiff's work performance did not begin until after she had filed her workers' compensation claim, that Ms. Cape made the decision to terminate plaintiff before ever meeting with her, and that Ms. Cape refused to consider alternative positions or reasonable accommodations [*Id.*].

In response, defendant argues that while plaintiff was on light duty, she was not performing all the essential duties of her position; "rather, she was performing only the tasks that her medical restrictions would allow her to perform" [Doc. 17]. Defendant also argues that "[o]nly after Plaintiff received permanent restrictions, which made clear she could not perform her old position or any other position for which she was qualified, was she terminated" [*Id.*].

It is well established that a plaintiff's physical inability to do the job is a legitimate reason for termination. *See Anderson*, 857 S.W.2d at 559; *see also Johnson v. Cargill,*

*Inc.*, 984 S.W.2d 233, 234 (Tenn. Ct. App. 1998) (citing physical inability to do the job as a non-pretextual, non-retaliatory reason for termination). Moreover, "[a]bsent a contractual arrangement, an employer is under no legal duty to provide an alternative position to a disabled employee." *Johnson*, 984 S.W.2d at 235 (citing *Leatherwood v. United Parcel Serv.*, 708 S.W.2d 396 (Tenn. Ct. App. 1985)). Here, defendant terminated plaintiff after learning that her temporary restrictions had become permanent, and that they would impede her ability to do her job properly [Doc. 15; Doc. 16-9 p. 4]. Although Ms. Cape admits that she made her decision to terminate plaintiff before their interactive meeting, the record indicates that she made this decision only after receiving information about plaintiff's permanent restrictions and after evaluating her ability to do her job based on those restrictions [Doc. 15-9 p. 7]. Furthermore, although defendant is not obligated to provide alternative positions to plaintiff, the record indicates that Ms. Cape considered the essential job functions of other positions that were available before making the decision that plaintiff's restrictions could not be accommodated [*Id*. at 6].

Thus, even if plaintiff provided a sufficient indication of a causal link between the filing of her workers' compensation claim and her discharge, because defendant articulated a legitimate, non-discriminatory reason for plaintiff's discharge, defendant is entitled to judgment as a matter of law.

12

**IV. Conclusion**

For the reasons stated above, the Court will **GRANT** Defendant's Motion for Summary Judgment [Doc. 15] and **DENY** as moot defendant's alternative motion for Partial Summary Judgment [*Id.*]. This case will be **DISMISSED** and the Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE